Approved: _____      **21 MAG. 6198**
          *Samuel P. Rothschild*
          SAMUEL P. ROTHSCHILD
          MITZI S. STEINER
          Assistant United States Attorneys

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA          :    SEALED COMPLAINT
                                  :    Violation of
   - v. -                         :    21 U.S.C. § 846
                                  :
SEBASTIAN BERGONZOLI,             :
                                  :
            Defendant.            :    COUNTY OF OFFENSE:
                                  :    NEW YORK
- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        CHRISTIAN GARCIA, being duly sworn, deposes and says
that he is a Special Agent with the Drug Enforcement Administration
(the "DEA"), and charges as follows:

### COUNT ONE
(Drug Trafficking Conspiracy)

        1.   In or about June 2021, in the Southern District of
New York and elsewhere, SEBASTIAN BERGONZOLI, the defendant, and
others known and unknown, intentionally and knowingly did combine,
conspire, confederate, and agree together and with each other to
violate the narcotics laws of the United States.

        2.   It was a part and an object of the conspiracy that
SEBASTIAN BERGONZOLI, the defendant, and others known and unknown,
would and did distribute and possess with intent to distribute a
controlled substance, in violation of Title 21, United States Code,
Section 841(a)(1).

        3.   The controlled substance that SEBASTIAN BERGONZOLI,
the defendant, conspired to distribute and to possess with intent
to distribute was five kilograms and more of mixtures and
substances containing a detectable amount of cocaine, in violation
of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.    I am a Special Agent with the DEA, and I have been personally involved in this investigation.  This affidavit is based on my investigation, my conversations with other law enforcement officers and other individuals, and my examination of reports and records.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.    Based on my training and experience, my participation in this investigation, including my personal observations, my conversations with a confidential source working at the direction of law enforcement (the "CS"),[1] my review of materials provided by the CS, including consensually created recordings of at least some of the communications described below,[2] my conversations with other law enforcement agents, and my review of law enforcement reports and records, I have learned the following, among other things:

a.    On or about June 14, 2021, law enforcement seized approximately ten kilograms of a substance that field tested positive for cocaine from the CS, who was attempting to sell those kilograms in Manhattan, New York.  The CS consented to the search of the CS's residence in New Jersey, where law enforcement seized an additional 113 kilograms of a substance that field tested positive for cocaine.

---

[1] The CS has been providing information to the DEA since in or about June 2021.  The CS faces a federal felony narcotics charge and is providing information to law enforcement in the hopes of receiving leniency with respect to that charge.  Information provided by the CS has been found reliable, credible, and corroborated by, among other things, consensually created recordings as discussed below.

[2] The communications described below were predominantly in Spanish, which the CS and I speak fluently.

        b.    The CS stated to law enforcement, in substance and in part, the following, among other things:

        i.    The CS has been involved in trafficking cocaine with a drug trafficking organization (the "DTO"), whose members include, among others, SEBASTIAN BERGONZOLI, the defendant, at least two individuals in Mexico ("CC-1" and "CC-2"), and an individual in New Jersey ("CC-3").    BERGONZOLI's participation in the DTO has entailed, among other things, (1) facilitating the transfer of narcotics proceeds to individuals in Mexico through, among other means, the delivery of cash to individuals in the United States, as well as the transfer of cryptocurrency, and (2) renting at least one vehicle (the "Vehicle") and at least one unit in a warehouse in New Jersey (the "Warehouse Unit" and the "Warehouse") for purposes of transporting, unloading, and storing narcotics.

        ii.    The CS drove the Vehicle to the Warehouse Unit. The Vehicle contained approximately four pallets carrying fruit, with approximately twenty-five kilograms of cocaine hidden in each of the four pallets. On or about June 11, 2021, the pallets were unloaded at the Warehouse Unit. At least some of the kilograms seized from the CS's residence in New Jersey were unloaded at the Warehouse Unit and then brought to the CS's residence.

        iii. The CS and BERGONZOLI communicate through, among other means, an application that permits encrypted text and voice communications and that permits the automatic deletion of communication records (the "App").

        c.    Following the CS's arrest, on or about June 15 and 16, 2021, the CS, at the direction and in the presence of law enforcement, surreptitiously recorded a number of voice and text communications with BERGONZOLI over the App in which they discussed, in substance and in part, their narcotics trafficking. For instance:

        i.    BERGONZOLI expressed concern to the CS because, in substance and in part, the owner of the Warehouse was complaining about the smell of rotten fruit coming from the Warehouse Unit. The CS reassured BERGONZOLI, in substance and in part, that the "things of interest to us" had already been moved from the Warehouse Unit, and that all that was left in the Warehouse Unit was fruit. The CS also informed BERGONZOLI, in substance and in part, that the shipment had included four pallets and that each pallet had "twenty-five." Based on the foregoing, my training and experience, and my conversations with the CS, I

believe that the foregoing communications reflect the CS explaining to BERGONZOLI that the shipment contained approximately one hundred kilograms of cocaine divided among approximately four pallets and reassuring BERGONZOLI that the CS had removed the cocaine from the Warehouse Unit.

ii. BERGONZOLI asked the CS, in substance and in part, how many "white shirts" were left. Based on the foregoing, my training and experience, and my conversations with the CS, I believe that the foregoing communication reflects BERGONZOLI asking the CS how many kilograms of cocaine were left.

iii. BERGONZOLI asked the CS, in substance and in part, how things went in New York. Based on the foregoing and my conversations with the CS, I believe that the foregoing communication reflects that BERGONZOLI was aware that the CS intended to distribute some of the DTO's narcotics in the New York City area.

iv. BERGONZOLI asked the CS, in substance and in part, whether the CS had talked to CC-3. In a separate, earlier recorded communication, the CS had, in fact, talked to CC-3, who had told the CS, in substance and in part, that CC-3 was looking for approximately one kilogram of cocaine to provide to an individual who would use that kilogram to give out samples to customers and then, if satisfied, purchase an additional approximately six kilograms from CC-3. Accordingly, when BERGONZOLI subsequently asked the CS, in substance and in part, whether the CS had talked to CC-3, the CS responded, in substance and in part, that the CS had talked to CC-3. The CS further conveyed to BERGONZOLI, in substance and in part, that CC-3 had asked the CS, in substance and in part, for a "sample" to go to an individual to whom "we brought something before." BERGONZOLI responded, in substance in part, by asking whether the CS was referring to the "guy who gave you bad vibes." The CS responded, in substance and in part, "no" it's "just one," a "sample." BERGONZOLI responded, in substance in part, by asking the CS "what are we going to do." The CS responded, in substance and in part, that the CS had it "under control." Based on the foregoing, my training and experience, and my conversations with the CS, I believe that the foregoing communication reflects BERGONZOLI and the CS discussing providing approximately one kilogram of cocaine to another individual as a sample ahead of a potentially larger transaction.

d. The CS believes the counterparty in those communications is BERGONZOLI because, among other things, the CS

has spoken with BERGONZOLI in person on multiple occasions and the CS recognizes the voice using the App as BERGONZOLI's voice.

              e. The thread of text communications between BERGONZOLI and the CS in the App includes a picture of an online receipt for a truck rental. The receipt reflects that the truck rental was paid for using a credit card in BERGONZOLI's name. According to the CS, that receipt corresponds to the rental of the Vehicle.

              f. On or about June 16, 2021, at the Warehouse, law enforcement officers in plain clothes and who had not identified themselves as law enforcement officers overheard the owner of the Warehouse on a phone call in which the owner was complaining, in substance and in part, about the smell of fruit coming from the Warehouse Unit. The officers also overheard the owner state, in substance and in part, that the owner was on the phone with "Sebastian," which, based on the foregoing, I believe to be a reference to BERGONZOLI.

              g. On or about June 16, 2021, in a communication over the App, BERGONZOLI told the CS, in substance and in part, that BERGONZOLI would be flying from Florida to New Jersey on or about June 17, 2021. Flight itinerary records confirm that BERGONZOLI is scheduled to fly from Florida to New Jersey on or about June 17, 2021.

              h. The CS positively identified as BERGONZOLI a photograph of BERGONZOLI from a law enforcement database.

              WHEREFORE, I respectfully request that SEBASTIAN BERGONZOLI, the defendant, be imprisoned or bailed, as the case may be.

_____
CHRISTIAN GARCIA
Special Agent
DEA

Sworn to before me this
\_\_\_ day of June, 2021

_____
THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK